HARRY G. YOUNG *vs.* MAINE CENTRAL RAILROAD COMPANY.

Cumberland.    Opinion February 27, 1915.

*Agents.    Carrier.    Contract.    Damages.    Delay in Transportation.    Limiting Liability.    Misconduct.    Negligence.    Owner's Risk Freezing. Perishable Freight.*

Action to recover damages for defendant's negligence as a common carrier whereby a carload of potatoes were frozen while being transported from a point in this State to a point in New Jersey.

*Held:*

1.    While the law is firmly established that a common carrier, in the absence of any statute to the contrary, may by special contract limit its liability, yet it is equally well established that the carrier cannot by special and express contract exempt himself from liability for any negligence or misconduct of himself or his agents.

2.    A common carrier is bound to exercise reasonable care and diligence in transportation, to transport in a reasonable time, without unnecessary delay, and to prevent, so far as is reasonable and practicable, any loss or damage which may be occasioned by delays in transit.    What is reasonable care and diligence in this class of cases must depend upon the circumstances of the particular case.

VOL. CXIII 10

3.   A delay from Nov. 26 until Nov. 30, under the circumstances of this case, is not an exercise of reasonable care and diligence.

4.   A common carrier cannot be exonerated from liability as such on account of unprecedented amount of business, or congested terminals, where it accepts shipment without notice of those conditions to the shipper.

5.   A common carrier cannot avoid liability as such by reason of sudden severity of weather, on the ground that the weather, and not the delay, was the proximate cause of the damage, for the weather is not an independent, intervening cause, but a natural condition, the chance of the occurrence of which should have been foreseen.

On report.   In accordance with stipulation, the entry must be, case to stand for trial.

This is an action on the case to recover damages for the loss of one carload of potatoes, by the alleged negligence of the defendant, which the plaintiff delivered to and the same were received by the defendant on the 26th day of November, 1910, at Hillside Station in Brunswick, to be carried by the defendant to Summit, in New Jersey, and there to be delivered by the defendants, through connecting railroads, to the order of the plaintiff.

The plea was the general issue.   At the close of the plaintiff's testimony, this case was reported to the Law Court by agreement of parties.   If the plaintiff is entitled to recover in this action, upon the evidence offered by him, the case to stand for trial; otherwise, the Law Court is to direct judgment for the defendant.

The case is stated in the opinion.

*Clarence E. Sawyer,* for plaintiff.

*Symonds, Snow, and Cook & Hutchinson,* for defendant.

SITTING:   SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

PHILBROOK, J.   This case comes to us on report, the defendant having offered no testimony, with the stipulation that if the plaintiff is entitled to recover upon the evidence offered by him the case is to stand for trial; otherwise this court is to direct judgment for defendant.

In the latter part of November, 1910, the plaintiff desired to ship a carload of potatoes from Hillside, a station on defendant's road, to Summit in the State of New Jersey.   He applied to defendant's

yard master at Brunswick for a refrigerator car, or a double lined car. The yard master replied to the applicant "I can't give you one, but I am going to give you a good car." The plaintiff said "I will get paper and line it," and he testified to the manner in which he fastened building paper to the floor and sides of the car, loaded the potatoes, and fastened the doors by means of wooden cleats. The freight agent's office of the defendant at Brunswick furnished the plaintiff with a red card, which was by him attached to the car. Proper blank spaces upon the card were filled by the plaintiff in his own handwriting, showing the initials and number on the car, the station of departure, the destination, the route, "Via Deering Jct.," and the date of loading, "Nov. 26, 1910." Upon the card when received by plaintiff there were printed in large type, the words, "Perishable freight;" in smaller type, "This car must not be delayed;" and in still smaller type, "Should car break down conductor must notify Superintendent by telegraph giving full particulars." The bill of lading, signed by the plaintiff as well as by defendant's agent, contained the words, "Owner's risk freezing," written across its face.

On Saturday, November 26, the car was shipped but as the defendant had no facilities for weighing at Deering Junction it was taken to Portland. According to a letter from the defendant's general freight agent the car arrived in Portland November 26, but was held there, and not delivered to the Boston and Maine railroad for forwarding until November 30. The delay according to the letter, "was on account of temporary disability caused by the extension and improvement of the terminal facilities here at Portland." The car reached its destination December 6, when it was discovered that the potatoes had been spoiled by freezing while en route.

By agreement of counsel a table of figures was introduced in testimony showing the minimum temperature at points along the route, from that of shipment to that of destination, and from the date of shipment to the date of arrival. This shows that severely cold weather prevailed during the last days on which the potatoes were being transported, while warmer weather prevailed on the earlier days. The plaintiff claims that if the transportation had been without delay the cold weather would have been avoided and the potatoes would not have been destroyed by freezing.

It is claimed by the defendant that by the terms of the contract between it and the plaintiff, evidenced by the bill of lading already

referred to, the plaintiff assumed all risk of damages resulting from the freezing of the potatoes.   No principle of law is now more firmly established than that a common carrier, in the absence of any statute to the contrary, may by special contract limit its liability, at least against all risks but its own negligence or misconduct.   *Hix* v. *The Eastern Steamship Company*, 107 Maine, 357.   But a qualification of the carrier's right to restrict his common law responsibility, almost as generally recognized as the right itself, and supported by innumerable authorities, is that a carrier cannot by special and express contract exempt himself from liability for any negligence or misconduct of himself or his agents.   4 Ruling Case Law, Sec. 232, and cases there cited; *Sager* v. *Portsmouth, etc., R. R. Co.*, 31 Maine, 228; *Willis* v. *Grand Trunk Railway Company*, 62 Maine, 488; *Little* v. *Boston & Maine Railroad*, 66 Maine, 239.

The plaintiff therefore, while not denying his signature to the bill of lading whereon appear the words "Owner's risk freezing," says that no contract between himself and the defendant can exempt the defendant from liability for any negligence or misconduct of itself or its agents.   Thus the issue between the parties is squarely presented as to whether the defendant was guilty of any negligence or misconduct which caused the damage complained of by the plaintiff.

It is not denied that the car was detained at Portland from November 26 to November 30.   The excuse given by the defendant was the congested conditions of the terminal facilities consequent upon extensive improvements.

The duty of the defendant "was to exercise reasonable care and diligence in transportation, to transport in a reasonable time, without unnecessary delay, to prevent so far as is reasonable and practicable any loss or damage which may be occasioned by delays in transit. What is reasonable diligence in this class of cases, as in all others where reasonableness is the standard, must depend upon the circumstances of the particular case." *Johnson* v. *New York, New Haven and Hartford R. R.*, 111 Maine, 263.

In a very comprehensive note to be found in Am. State Reports, Vol. 11, at page 361, we find the following; "As the law does not define what is an unreasonable delay in the shipment of goods, and as each case must be determined by the jury upon its own peculiar facts, it remains to illustrate the subject by the consideration of those cases in which the delay has been of such nature as, under the facts,

to be considered reasonable, and to excuse the carrier from liability, or to have been unreasonable, and to make him responsible in damages for the delay." Among the illustrations are to be found the following: "Where the carrier accepts perishable property, such as potatoes, to be shipped over its line at a season of year when, in the course of nature, severely cold weather is to be apprehended, though the weather may be warm when the freight is received, the carrier is bound to use great diligence in forwarding such property with haste and dispatch, and where, by a delay of two or three days, either in transporting or delivering it, it is damaged by freezing, he is liable for such damage;" citing as authorities, *McGraw* v. *B. & O. R. R. Co.*, 18 W. Va., 361; 41 Am. Rep., 696; *Wood* v. *Chicago, Milwaukee and St. Paul Railway Company*, 68 Iowa, 491; 56 Am. Rep., 861; *Hewitt* v. *Chicago, etc., R'y Co.*, 69 Iowa, 665. We may also cite an illustration from our own court in *Johnson* v. *N. Y., N. H. & Hartford R. R.*, supra, where a delay lengthening the time of transportation from twenty-four hours or less to fifty-three hours, resulting in injury to crates of strawberries, was considered an unreasonable delay.

Upon this branch of the case we conclude that a jury would be warranted in saying that there was unreasonable delay.

It has already been suggested that the defendant seeks complete exoneration from its liability by saying that there was a congested condition of its terminal facilities but we do not think this excuse will avail. A carrier cannot excuse delay in transporting freight on account of shortage of cars and unprecedented amount of business where it accepts shipment without notice of those facts to the shipper. *Daoust* v. *Chicago, R. I. & P. R. Co.*, 149 Iowa, 650; 128 N. W., 1106; *Unionville Produce Co.* v. *Chicago B. & Q. R. Co.*, 168 Mo. App., 168; 153 S. W., 63; *Missouri K. & T. Ry. Co.* v. *Stark Grain Co.*, 103 Tex., 542; 131 S. W., 410. "It is the duty of a common carrier to provide sufficient facilities and means of transportation for all freight which it should reasonably expect will be offered, but it is not bound to provide in advance for extraordinary occasions, nor for an unusual influx of business which is not reasonably to be expected. When an emergency arises and more business is suddenly and unexpectedly cast upon a carrier than he is able to accommodate, unless the carrier decline to receive the excess offered some shippers must be necessarily delayed; yet if the shipper do receive the goods without notice to the shippers of the circumstances likely to occasion delay, or fail to

obtain his assent, express or implied, to the delay, he will be bound to transport the goods within a reasonable time, notwithstanding such emergency" *Dawson* v. *Chicago & A. R. Co.*, 79 Mo., 296; *Joynes* v. *Pennsylvania Railroad Company*, 235 Pa. St., 232; 83 Atl., 1016; Ann. Cases 1913, D. 964.

Finally the defendant urges that the delay complained of by the plaintiff was not the proximate cause of the damage done to the potatoes and therefore says it is not liable for that reason. While the rule is well established that in the event of an unreasonable delay in the carriage of goods the carrier will be held liable for all losses or damages consequent thereon, yet the mere fact that a delay has occurred is not sufficient to charge a carrier unless it appears that such negligent act was in truth the proximate and not merely the remote cause of a loss. 4 Ruling Case Law; Sec. 213. But in *McGraw* v. *Baltimore and Ohio Railroad Company*, supra, a case strikingly similar to the one at bar, the court held, taking into account the nature of the property, its liability to be injured by freezing weather, the distance from the point of shipment to the place of destination, the favorable condition of the weather when the property was delivered to the carrier and its liability to change at that season of the year, that the carrier was liable for the damage to the property because the delay was the immediate and proximate cause of that damage.

The precise principle which we are now considering is well illustrated and discussed in *Marsh* v. *Great Northern Paper Company*, 101 Maine, 489. In that case the defendant negligently or through misfeasance unnecessarily delayed a lot of logs which it was under obligation to drive and as a result of that delay, the freezing of the logs into the ice of the river, and a December freshet, a portion of the logs were carried out to sea and lost; and another portion lost in the same manner in the freshet of the next spring. The court there said; "The defendant cannot avoid liability for its negligence by reason of the early freezing of the river, because this was not an independent, intervening cause, but a natural condition, the chance of the occurrence of which should have been foreseen. Our conclusion is that a jury would have been authorized in finding from the evidence, and in accordance with the rules of law that the negligence of the defendant . . . . was the direct and proximate cause of the injury sustained by the plaintiffs."

From the evidence introduced, and under the authorities cited, we are of the opinion that the plaintiff is entitled to recover.

In accordance with the stipulation the entry must be,

*Case to stand for trial.*