No. 23,403.

E. T. ANDERSON, *Appellant*, v. (WALKER D. HINES, as Director-gen-
eral of Railroads), JOHN BARTON PAYNE, as Agent, etc., Substi-
tuted, *Appellee*.

### SYLLABUS BY THE COURT.

CARRIERS — *Delay in Transportation* — *"Unavoidable Accidents"* —*Inexcusable
Delays.* The statute requiring carriers to transport live stock without de-
lay and at a rate of speed averaging fifteen miles per hour, unless prevented
by unavoidable accident, and subject to certain exceptions, interpreted,
and *held*, delays from the following causes are not excusable: Allowing
trains to pass; track blocked by trains; waiting for block; taking water
and coal; inspecting train; lunch for train crew; waiting for engine; cut-
ting out helper; hot box; sparks from brake shoe; loading stock for other
shippers.

Appeal from Morris district court; ROSWELL L. KING, judge. Opinion filed
January 7, 1922. Reversed.

*Edwin Anderson*, and *W. J. Pirtle*, both of Council Grove, for the appellant.
*William R. Smith*, *Owen J. Wood*, and *Alfred A. Scott*, all of Topeka, for
the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages resulting from delay
in transporting cattle. The plaintiff recovered the sum of $24.24,
and appeals.

The plaintiff shipped three trainloads of cattle from Garden City
to pastures at Burdick, Diamond Springs, and Hymer. Two car-
loads of the cattle were detained at Newton, and arrived a day late.
The delay occasioned feed bills which the plaintiff was obliged to
pay, amounting to $8.24 and $16. The trains carrying the remain-
der of the cattle were several hours late in arriving at their destina-

tions and, because of the delay, the cattle had to be kept in muddy pens over night before they could be watered or fed. Extra shrinkage of the cattle occasioned by the delay was duly proved, but the jury allowed the plaintiff nothing but the feed bills.

The verdict was induced by erroneous instructions relating to the duty of the defendant. The statute reads as follows:

"That all persons, firms or corporations operating railroads as common carriers shall transport all live stock received by them for transportation within this state without delay, and shall transport the same at a rate of speed not less than an average of fifteen miles an hour for the entire distance over which said shipment is transported by rail within this state, unless prevented by unavoidable accidents: *Provided,* The time consumed for loading, by stops for watering and feeding occasioned by the requirements of law, or the order of the shipper, shall not be considered a part of the time in which shipments are required to be made.

"Any common carrier which fails or refuses to transport such live stock at a rate of not less than fifteen miles an hour as herein provided shall be liable for all damages which may be sustained by any person on that account, which damages shall include the loss resulting from a depreciation on the market, shrinkage in weight of such live stock, the loss in time of shipper, his agent or employee, and any extra expense occasioned thereby and all other damages which are the proximate result of such failure, together with the costs in case suit is brought to recover same, and a reasonable attorney fee fixed by court on the trial of said cause: *Provided,* That all other statutory and common-law remedies in addition to the remedies provided herein are hereby preserved to the shippers." (Gen. Stat. 1915, §§ 8522, 8523.)

The defendant's records disclosed in part the cause for delay and the time lost in the movement of each train. Among the causes of delay were the following: Allowing trains to pass; track blocked by trains; waiting for block; taking water and coal; inspecting train; lunch for train crew; waiting for engine; cutting out helper; hot box; sparks from brake shoe; removal of beam rod; loading stock for other shippers. The court instructed the jury that time lost in loading cattle for other shippers was not part of the time within which shipments must be made. The time consumed by loading, referred to in the statute, is the time consumed in loading the live stock of the complaining shipper, the purpose of the statute being to fix a time when computation of the statutory rate of speed begins. The court also instructed the jury that delays occasioned by handling, meeting and passing other trains were embraced in the expression "unavoidable accident." The purpose of the statute was to insure the adoption of train schedules which allow transportation of live stock at the specified rate of speed, and delay of the com-

plaining shipper's train, caused by handling, meeting or passing another train, is excused only in the event the delay was the proximate result of unavoidable accident to the other train.

In the case of *Patterson v. Railway Co.*, 77 Kan. 236, 94 Pac. 138, the court considered the meaning of the term "unavoidable accident," as used in the car-service law, and adopted from an earlier case the following definition of the word "accident:" "an undesigned contingency; a happening without intentional causation; that which exists or occurs abnormally; something unusual or phenomenal; an uncommon occurrence." (p. 242.) In the case of *Milling Co. v. Railway Co.*, 82 Kan. 256, 108 Pac. 137, this definition was approved, and was applied to those causes of delay which a carrier cannot be expected to provide for or to avoid. The car-service statute and the statute under consideration, one relating to furnishing cars and the other relating to transporting cars, are virtually *in pari materia,* and the term "unavoidable accident" has the same meaning in each. Applying that meaning, none of the delays proved by the defendant was excusable except the eight minutes of time lost in removing the beam rod. There is nothing unusual or abnormal about the development of hot boxes or sparks from brake shoes in the movement of freight trains, and schedules must necessarily take into account a certain amount of delay from such causes. Other causes of delay in transporting plaintiff's cattle need no discussion.

The judgment of the district court is reversed, and the cause is remanded for a new trial.