12521

SANDERS v. CHARLESTON & W. C. RY. CO.

(145 S. E., 400)

March, 1928.

*Messrs. F. B. Grier, W. J. Thomas,* and *M. G. McDonald,* for appellant,

*Messrs. Claude M. Aman,* and *Alfred Wallace, Jr.,* for respondent,

November 12, 1928.

The opinion of the court was delivered by Mr. Justice Stabler.

This is the second appeal in this case. The first was taken by the plaintiff from an order of the trial Judge directing a verdict for the defendant; the decision of the Court reversing the judgment below being reported in 143 S. C., 395, 141 S. E., 607.

The action was brought against the defendant, as the initial carrier, for the recovery of damages resulting from an alleged negligently delayed shipment of a carload of tomatoes. The following are the material allegations of the complaint:

"That on the 12th day of July, A. D. 1924, the plaintiff delivered to the defendant company on its tracks at Port Royal, S. C., six hundred and eighty [680] crates of tomatoes, the same being a perishable commodity, for transportation to plaintiff's agent, Olivit Bros., Incorporated, at New York City, in the State of New York, to be sold on commission for the account of the plaintiff, and that the defendant issued its bill of lading for the same.

"That at the time the said tomatoes were delivered to the defendant company, they were in good condition and properly packed and of the very best quality, and, being a perishable commodity or property, they were accepted for

shipment at a higher rate and classification under the vegetable tariff than is charged by the plaintiff for transporting goods of a non-perishable nature. That, by reason of their perishable nature and higher freight charges made by the defendant, the plaintiff was entitled to prompt and expeditious handling and transportation to the point of destination, and prompt delivery of the said shipment to plaintiff's consignee.

"That on account of the usual schedule of the defendant company from Port Royal, S. C., to New York City, the said shipment should have been delivered to plaintiff's consignee on the 14th day of July, A. D. 1924, in time for the early morning market, at which time the market price for tomatoes of the kind and quality which constituted this shipment of 680 crates of tomatoes was three thousand four hundred and no/100 ($3,400.00) dollars. The defendant, however, negligently, carelessly, and in utter disregard of its duty to the plaintiff, failed and neglected to deliver the said shipment until the 17th day of July, A. D. 1924, at which time they were pricked, rotted, heated, nested, and in such a damaged condition, and in addition thereto, the market price had declined so that they sold for the sum of one thousand, two hundred, ninety-seven and 50/100 ($1,297.50) dollars. That, if the said shipment of tomatoes had arrived and been delivered to the plaintiff's consignee in time for the early morning market of July 14th they would have sold for the sum of three thousand, four hundred and no/100 ($3,400.00) dollars, whereas as a matter of fact, in consequence of the careless, negligent acts of the defendant, as above set forth, the said shipment of tomatoes only brought the sum of one thousand, two hundred, ninety-seven and 50/100 ($1,297.50) dollars, to the damage of this plaintiff in the sum of two thousand, two hundred, two and 50/100 ($2,202.50) dollars, together with interest thereon from the 14th day of July, A. D. 1924, at the rate of seven per cent. per annum. Plaintiff

alleges that she has paid the sum of $346.80 freight upon the above shipment."

The defendant, answering, denied any unreasonable or negligent delay in the shipment, and alleged by way of affirmative defense:

"(a) That heretofore on or about the 12th day of July, 1924, defendant received from plaintiff a shipment of tomatoes in barrels at Port Royal, S. C., consigned to Olivit Bros., destination New York, and thereupon issued its bill of lading therefor, which constitutes and is a written contract between the parties plaintiff and defendant and connecting lines en route to destination in this behalf.

"(b) That, in and by the provisions of the said bill of lading Section 2 (a), it is, among other things, provided: 'No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market, or otherwise than with reasonable dispatch.' That defendant and its connecting lines over which the shipment moved to destination fully kept and performed in every particular the terms and conditions of the said written contract of shipment.

"(c) That this shipment in order to reach its destination by the shortest and most available route, had to move and did move over the line of this defendant to Yemassee, S. C., where it was delivered to the Atlantic Coast Line; thence over the rails of the Atlantic Coast Line to Richmond, Va., where it was delivered to the R. F. & P.; thence over the rails of the R. F. & P., to Potomac Yards, Va., where it was delivered to the Pennsylvania Railroad, and thence over the rails of the Pennsylvania Railroad to destination. That on this movement defendant's line does not extend beyond Yemassee, S. C. That this defendant promptly and with great dispatch transported and delivered without loss, injury, or damage the said shipment to its connecting line at Yemassee. That the aforesaid connecting carriers promptly and with great dispatch transported to destination and delivered the said shipment without loss, injury, or damage.

"(d) That delivery at New York on the fourth morning after receipt of a shipment at Port Royal, S. C., is the quickest possible time that can be made under the fastest schedule now obtaining and at the times mentioned in the complaint hereon. That in the ordinary and reasonable course of transportation a much longer time is ordinarily required in the reasonably prompt and careful handling of a shipment from Port Royal, S. C., to New York City, the destination, to wit, five days, and sometimes as much as six days."

The case was tried before his Honor, Judge Bonham, at the March, 1928, term of the Court of Common Pleas for Beaufort County. The Court overruled the defendant's motion for a directed verdict and submitted the issues of negligence and damage to the jury, who found for the plaintiff in the sum of $700.

The defendant appeals and makes the Court's refusal to direct a verdict the basis of assignment of error. Counsel for the appellants state and argue, upon the exceptions, two propositions: (1) That, in determining whether a case arising under the Carmack Amendment should be submitted to the jury, the court must be governed by the federal rule requiring *substantial* evidence of negligence and not by the state rule under which a mere *scintilla* of evidence is sufficient; and (2) that there was no substantial evidence of negligence in the case.

The following from the Court's decision in the first appeal is here quoted as stating correct, applicable legal principles. The Court said:

"The principle is well established in this State that on motion for a directed verdict the evidence must be considered most favorably to the opponent of the motion. *Crews v. Sweet,* 125 S. C., 303, 118 S. E., 613, 29 A. L. R., 43; *Wilson v. Railway Co.,* 134 S. C., 31, 131 S. E., 777; *Anderson v. Hampton,* 134 S. C., 185, 132 S. E., 47; *Brog-*

*don v. Northwestern R. Co. of South Carolina,* 141 S. C., 239, 139 S. E., 459.

"In an action for damages for negligent delay in transportation of a perishable vegetable, the plaintiff is required to show negligence arising out of an unreasonable delay, and also that such negligence was the proximate cause of the damage. *Van Epps et al. v. A. C. L. Ry. Co.,* 105 S. C., 406, 89 S. E., 1035. But negligence may be inferred from circumstances. It was held in *Hudson v. Railway,* 123 S. C., 488, 124 S. E., 584:

" 'Some act of negligence as alleged must be proven, but this negligence may be shown by a number of facts and circumstances, which taken together establish the act of negligence charged.'

"Under the Carmack Amendment (49 U. S. C. A., § 20; U. S. Comp. St., §§ 8604a, 8604aa), the initial carrier of an interstate shipment is liable for loss or damage caused by negligence of connecting carriers. *Van Epps case, supra,* which is very similar to this case, and in that case it was also held:

" 'Where the evidence is susceptible of more than one inference, the question whether a carrier failed to transport goods with reasonable dispatch was for the jury, and the trial Court could not direct a verdict without invading the province of the jury.'

"In *Trakas v. Ry. Co.,* 87 S. C., 208, 69 S. E., 210, the legal principle is announced:

" 'When the goods are perishable, the carrier should exercise care in view of that fact, and, when perishable goods are delivered by the carrier in a damaged condition, the presumption makes it incumbent on the carrier to show that its negligence did not contribute to bring about or hasten the deterioration.' "

In the light of the foregoing principles, we shall now consider the appellant's two propositions in order.

It is well established that, in all cases affecting interstate commerce the federal law and the practice of the Federal Courts govern. *Railroad Co. v. Carl,* 227 U. S., 639, 33 S. Ct., 391, 57 L. Ed., 683; *Chicago & N. W. Railroad Co. v. Whitnack Prod. Co.,* 258 U. S., 369, 42 S. Ct., 328, 66 L. Ed., 665. There is also binding authority for the appellant's contention that, in cases such as the present, more than a scintilla of evidence is required for submission to the jury. *Commissioners v. Clark,* 94 U. S., 278, 24 L. Ed., 59; *Small Co. v. Lamborn & Co.,* 267 U. S., 248, 45 S. Ct., 300, 69 L. Ed., 597. Counsel for the appellant cite several South Carolina cases in support of the view that the scintilla of evidence rule prevails in this State, and suggest that the trial Judge evidently had these cases in mind and applied the State rule in his refusal to grant the motion for a directed verdict, and thereby committed error. We cannot say, as the record does not disclose just what rule the trial Judge had in mind when he refused the motion. It appears that, after giving due consideration to the matter, the Court simply stated that the motion should be denied and the facts submitted to the jury with proper instructions. We may safely assume that the learned Judge was conversant with the legal principles applicable to the issues made. Moreover, the very questions here raised on appeal were before him as grounds upon which the defendant was moving, and no doubt were fully argued by zealous counsel. But even if the Court submitted the case to the jury under the scintilla of evidence rule, the error was harmless, if it should be found that there was sufficient evidence to support the verdict. This brings us to a consideration of the appellant's second proposition, which will require an examination of the testimony.

The evidence is practically the same as that on the first trial. Testimony for the plaintiff tended to show that 680 crates of tomatoes were delivered to

the defendant at Port Royal, S. C., on July 12, 1924, for shipment to New York City; that they were properly packed and in good condition; that it would take about one hour to load a car of 680 crates; that the usual time for delivery of perishable products from the Beaufort territory to New York City was for the fourth morning market after shipment, but that prior to the World War there had been a third morning delivery; that when the tomatoes were delivered to the consignee at New York City, on July 17, the fifth morning market, they were in bad condition and sold for a much lower price because of deterioration; that their damaged condition and the consequent loss to the plaintiff were caused by failure of the defendant to transport and deliver the tomatoes promptly and on the arranged schedule time between Port Royal, S. C., and Pier 29, New York City; that also the market price had declined during the delay in transportation and delivery; and that the plaintiff was damaged in the sum of $2,202.50.

The defendant's witnesses testified that, when the car in which the tomatoes were shipped reached the Potomac Yards near Washington, on the evening of July 14, it had to be cut out and sent to the shops for repairs on account of a cut journal, commonly called a "hot box"; that the Potomac yards was a point where the cars coming in were inspected and classified (that is, put "into the tracks to move out on solid trains either over the Pennsylvania Railroad or the Baltimore & Ohio"); that on this date, July 14, there was considerable congestion in the yards, there being about 5,250 cars to be handled for classification; that when the car in which the tomatoes were shipped had been classified, it was sent to the shops, a distance of $1\frac{1}{8}$ miles, for repairs to the journal; that it was then 11:55 p. m. and the car was scheduled to leave 3:30 a. m., the 15th; that it required 2 hours to make the repairs; that the period of 3 hours and 35 minutes intervening between the classification and the scheduled hour of leaving was not sufficient "to make

this movement and dispatch on the market date"; that it was impracticable to have transferred the contents of this car to another car; and that in doing so as much time would have been consumed as was required to effect the repairs.

The appellant contends that the hot box, classed as a running defect, was an unavoidable accident, "caused by the constant vibration of the journal against the oil-soaked waste in the journal box, occasionally causing the waste to settle and pack so as to miss contact with the journal and thus deprive it of its usual lubrication."

The word "accident" has been defined as "something unusual or phenomenal; an uncommon occurrence."

With respect to a development of a hot box as an unavoidable accident, the Supreme Court of Kansas, in *Anderson v. Hines, Director General of Railroads,* 110 Kan., 250, 203 P., 726, has this to say:

"There is nothing unusual or abnormal about the development of hot boxes or sparks from brake shoes in the movement of freight trains, and schedules must necessarily take into account a certain amount of delay from such causes."

To the same effect is the decision of the Supreme Court of Wyoming, in *Davis v. Graham,* 31 Wyo., 239, 225 P., 789, the Court, among other things, saying:

"It would seem that none of the matters mentioned [among them a hot box] should be considered as unavoidable accidents in the absence of a showing of an unusual condition which could not have been prevented by the exercise of reasonable care."

But, even if it should be conceded that the development of the hot box was an unavoidable accident, there was testimony, as we have already pointed out, tending to show that at the date of this shipment the usual time of delivery of perishable products from the Beaufort territory to New York City was the fourth morning market, and that prior to the World War there was a third morning delivery.

Witnesses for the appellant testified that, between the completed classification of the car at the Potomac yards and the time that the train left there at 3:30 a. m., July 15, for the fourth morning market, there remained 3 hours and 35 minutes to make the necessary repairs to the cut journal, which required 2 hours, and to take the car to the shops, a distance of 1⅛ miles, and to put it back in the train. The appellant knew that the goods shipped were of a perishable nature and that delay in delivery might result in damage to the plaintiff on account of deterioration and by reason of a possible decline in price. Under the facts and circumstances of the case, it was a question for the jury whether the defendant exercised reasonable care to prevent the delay, or whether the delay was unreasonable and due to the negligence of the defendant and its connecting carriers. The appellant attempts to explain why it could not complete the repairs and get the car back in the train in time to leave at 3:30 on the morning of the 15th, claiming that, with an unusually heavy traffic on July 14th, any disruption in the system of handling cars would result in added congestion and confusion. There is no evidence that the congestion was unexpected; rather it appears that the heavy traffic was the natural result of a healthy growth of business. Without discussing the point further, it is only necessary to say that the testimony does not show that the claimed congestion on the yards furnished, as a matter of law, a legal excuse for the delay in shipment. A study of the record discloses that there was ample and substantial evidence to take the case to the jury, and that the court committed no error in refusing appellant's motion for a directed verdict.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS JUSTICES COTHRAN, BLEASE, and CARTER concur.