Apple *v.* The Board of Commissioners of Marion County.

Filed March 19, 1891.

No. 14,699.

APPLE *v.* THE BOARD OF COMMISSIONERS OF MARION COUNTY.

WITNESS.— *Volunteer Statement.— Cross-Examination.*—Where a witness, on direct examination, volunteers a statement not called for, and the statement is allowed to go to the jury without objection, it is not error to permit a cross-examination relative to the volunteer statement.

BRIDGE.— *Injuries Caused by Breaking Down of.— Traveller's Knowledge of Defect.— Instruction.*—In an action against a county for injuries caused by the breaking down of a bridge, an instruction that if the plaintiff was acquainted with the bridge, and knew the kind of timbers of which it was constructed, and knew how long such timbers had been in the bridge, "the plaintiff is chargeable with knowledge of the tendency of such timbers to decay, incident to age and long use," is erroneous. In approaching a bridge the traveller has a right to assume that the officers charged with its erection and maintenance have done their duty, and that he can pass over it in safety.

SAME.— *Instruction.*—In such action an instruction that if the plaintiff knew the kind of timbers of which the bridge was constructed, the length of time they had been in it, that a part of the same kind of timber still remained, and that plaintiff might have reached his destination by travelling another route, the jury might consider the plaintiff's knowledge of such facts in determining whether the bridge was unsafe, and whether the plaintiff had knowledge of its actual condition, is erroneous.

From the Marion Circuit Court.

Apple *v.* The Board of Commissioners of Marion County.

*W. W. Woollen,* for appellant.

*F. J. Van Vorhis* and *W. W. Spencer,* for appellees.

McBRIDE, J.—Appellant filed a claim for $2,074.85 before the board of commissioners of Marion county, for injuries which he claimed to have sustained in person and property by the breaking down of a certain bridge, which he alleged had been allowed to become unsafe and dangerous by reason of the negligence of appellee.

The board allowed him $25 and rejected his claim for the balance. He appealed to the circuit court where the case was tried by a jury and a verdict returned for the appellee. The questions presented here arise on the motion for a new trial made by appellant and overruled by the circuit court.

On the trial of the cause the appellant asked one of his witnesses the following question relative to the bridge:

Q. "Did you make a casual examination of it?"

The witness answered: "Nothing more than I passed over the bridge. Some of the parties living in the immediate neighborhood of the bridge complained of the bridge. They thought it was not safe. In fact it became a somewhat general talk in the neighborhood, and I knew it was a bridge that the county would have to build, and I came and notified the commissioners."

On cross-examination of this witness the following questions were asked and answers given:

Q. "I will ask you if you ever heard anybody talk about that bridge out there, that did not consider it unsafe?" A. "I do not know that I ever heard such talk as that. I do not remember of any talk of that kind."

Q. "I understand you by that, that whenever you heard that bridge mentioned or spoken of, it was regarded by them who talked of it as unsafe?" A. "Yes, sir, I never heard it spoken of as a good bridge."

Q. "That is not the question; the question I asked you— I understand you, that whenever you heard that bridge

spoken of it was regarded by those who talked of it as an unsafe bridge?" A. "Yes, sir."

Appellant objected to the cross-examination and insists that the court erred in permitting it. We think otherwise. The witness, on direct examination, did not content himself with answering the question, but volunteered a statement not called for. Appellant might have disclaimed this and had it stricken out. He did not do so, and the cross-examination was not improper as addressed to the volunteer statement. Having allowed the statement to go to the jury without objection he can not complain that the court allowed cross-examination relative to the same matter.

The court, at the request of the appellant, gave to the jury the following instruction:

"6. The board of commissioners are chargeable with knowledge of the tendency of timbers to decay, and it is incumbent upon the commissioners to use ordinary care in providing against the timbers in a bridge becoming unsafe because of the decay incident to age and long use. They are not bound, however, to do more than use ordinary care and diligence; and if they act with ordinary care and diligence there is no liability."

This instruction stated the law correctly. The court then, of its own motion, gave to the jury the following instruction:

"I have heretofore instructed you that the board of county commissioners are chargeable with the knowledge of the tendency of timbers to decay; and I now charge you that if you find from the evidence in this case that the plaintiff was acquainted with this bridge, and knew the kind of timbers of which it was constructed, and knew how long such timbers (that were in the bridge at the time of the accident) had been in the bridge, then the plaintiff is also chargeable with knowledge of the tendency of such timbers to decay, incident to age and long use."

It may be said that all persons are, in a certain sense,

chargeable with knowledge of the tendency of timbers to decay as an incident of age and long use, as it may be said all persons are supposed to know of the tendency of water to run down hill. Both are matters of common knowledge.

Boards of county commissioners are, however, charged with certain duties with reference to the construction and maintenance of bridges, which require them to take notice of the tendency to decay in materials composing them in a sense not required of others. Knowing, as they must, in common with all others, of such tendency, the law makes it their duty to use ordinary care and diligence in informing themselves of their condition, and in providing against danger to the travelling public by reason of such tendency to decay.

The traveller is charged with no such duty. As a rule, the traveller, approaching a bridge, has a right to assume that the officers charged with its erection and maintenance have done their duty, and that he can pass over it in safety. Unless he has from some source information of probable defects he is not required to inspect it, provided he is proceeding in the ordinary way and with no unusual load. Acquaintance with the bridge, knowledge of the kind of timbers of which it was constructed, or of the length of time they had been in the bridge, would not necessarily, nor of themselves, be sufficient to charge him with contributory negligence in attempting to cross it. He would have the right to assume that decayed timbers would be removed and defects repaired. If he should find the bridge open for passage, with nothing to indicate danger, he has a right to regard it as an assurance from the board of county commissioners that it is safe for use in the ordinary way and with the ordinary vehicles and loads. *House* v. *Board, etc.*, 60 Ind. 580 ; *Board, etc.*, v. *Legg*, 110 Ind. 479 ; *City of Indianapolis* v. *Gaston*, 58 Ind. 244 ; *Town of Elkhart* v. *Ritter*, 66 Ind. 136 ; *Patton* v. *Board, etc.*, 96 Ind. 131 ;

*Board, etc.,* v. *Brown,* 89 Ind. 48; *Vaught* v. *Board, etc.,* 101 Ind. 123; *Board, etc.,* v. *Dombke,* 94 Ind. 72.

This instruction would have a tendency to mislead the jury, by causing them to measure the conduct of the appellant by the wrong standard. They were correctly instructed that the appellant could not recover if guilty of contributory negligence.

One effect of this instruction would be to place appellant and appellee upon the same level in the minds of the jury with regard to their duties and liabilities, growing out of their assumed knowledge of the tendency of timber to decay. The jury would, from the two instructions taken together, get wrong impressions of what would be contributory negligence on the part of appellant.

While, as we have said, all persons may, in a certain sense, and to a certain extent, be chargeable with knowledge of a tendency of timber to decay, as that fact is a part of the common stock of knowledge, yet that knowledge, as attributed to the officer charged with the duty of building and maintaining bridges is not merely a knowledge that with time comes decay, but his official duty requires him to take special notice of the fitness of material used in such structures, the comparative durability of the various materials used, as well as of the time when by decay or continuous use it is likely to become unsafe.

Failure on the part of the officer to use reasonable diligence in informing himself upon such matters as are necessary to enable him to cause bridges to be constructed of proper material or kept in proper repair, is negligence. It is because of the duty thus resting upon the officer that he is in such cases chargeable with negligence. No such duty resting upon the traveller, his conduct must be measured by a different rule. This instruction is clearly erroneous.

The court, of its own motion, also gave to the jury the following instruction:

"2. You are the exclusive judges of the evidence, the

credibility of witnesses, and the weight you will give to their testimony. If you believe from the evidence that the plaintiff, Francis M. Apple, knew of the kind of timbers of which the said bridge was constructed, and the length of time they had been in said bridge; that part of the timbers in said bridge had decayed and been removed, and that there still remained in the said bridge timbers of the same kind; and that those travelling over said bridge did not attempt to carry upon their wagons a full load, because of the condition of said bridge; and that the plaintiff might have reached his destination by travelling another route, though longer, then you are entitled to consider said facts (if from the evidence you find them or any of them to be facts), together with all of the other facts and circumstances proven in the case, in determining the question whether or not the said bridge was, on July 25th, 1887, unsafe and dangerous to be travelled over with a heavy loaded wagon; and whether, at said date, the plaintiff had actual knowledge of the actual condition of said bridge. But you are the exclusive judges of what weight you will give, if any, to such evidence, if any, in determining, both the condition of the said bridge and the plaintiff's knowledge thereof."

The court also erred in giving this instruction: The jury are told by it that they are entitled to consider appellant's knowledge of certain facts in determining: 1st. Whether or not the bridge was in fact unsafe and dangerous; and 2d. Whether appellant had knowledge of its actual condition.

While possibly some of said facts might properly be considered in determining appellant's knowledge of the condition of the bridge, we can not understand how any light would be thrown upon his knowledge of its condition by the fact that he might have reached his destination by travelling another route. And how can it possibly be said that appellant's knowledge of any, or of all of said facts, tended to determine whether or not the bridge was in fact safe or unsafe. Assume that appellant knew the kind of timbers of which

the bridge was constructed, the length of time they had been in it, that a part of the timbers had decayed and been removed, and that a part of the same kind of timber still remained, it can not be said that his knowledge of said facts had any tendency to prove that the bridge was or was not dangerous, nor did they have any tendency to prove that appellant knew of its condition at that time. As we have heretofore said, he had a right to assume that the commissioners had done their duty ; that all dangerous and decayed timber had been removed and sound timbers substituted, and the bridge kept in safe condition for use.

The judgment is reversed, with instructions to the circuit court to grant a new trial.

Filed April 4, 1891.