CASE 88.—ACTION BY STILES, GADDIE & STILES AGAINST
THE LOUISVILLE & NASHVILLE R. R. CO.—May
12, 1909.

# L. & N. R. R. Co. v. Stiles Gaddie & Stiles

Appeal from Nelson Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Judgment for plaintiffs, defendant appeals.—Affirmed.

1.  Carriers—Carriage of Live Stock.—Where cattle being trans-
    ported by a carrier were unloaded for food, etc., in compliance
    with the federal statute, and while in the stockyards were
    burned in a conflagration, which was not caused by any negli-
    gence of the carrier, it was liable for the loss.
2.  Carriers—Carriage of Live Stock—Food and Rest.—At com-
    mon law it was the duty of carriers of live stock for long
    distances to feed, water and rest them as reasonable necessity
    required.
3.  Carriers—Carriage of Live Stock—Liability as Carrier.—When
    live stock is delivered to a carrier for transportation, its lia-
    bility commences when the stock is delivered to it at its stock
    pens or warehouses for shipment.
4.  Carriers—Carriage of Live Stock—Liability as Warehouse-
    men.—Where a carrier of live stock has notified the consignee
    of the arrival of the shipment and a reasonable time for him
    to receive it has elapsed, the liability of the carrier becomes
    that of a warehouseman.
5.  Appeal and Error—Evidence Admissible by Reason of Evi-
    dence of Adverse Party.—Appellant could not complain of
    incompetent testimony brought out on the redirect examina-
    tion of a witness to explain incompetent testimony devel-
    oped on cross-examination by appellant.
6.  Appeal and Error—Harmless Error—Admission of Evidence.—
    Error in the admission of incompetent evidence was cured
    by the practical elimination of it by the instruction.

JOHN S. KELLEY and BENJAMIN D. WARFIELD for appel-
lant.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. The only question raised and decided on the first appeal (110
S. W. 820) was as to whether the trial court erred in sustaining
a demurrer to the petition, and which demurrer was rested on the
ground that the petition did not allege any negligence on the part

L. & N. R. R. Co. v. Stiles, Gaddie & Stiles.

of defendant whereby the horses, for whose value this action was brought, were destroyed in a conflagration at Louisville.

2.   On the remanding of the case to the circuit court, defendant answered and pleaded, among other things, the Act of Congress commonly known as the "twenty-eight hour law" (Sections 4386, 4387 and 4388, Revised Statutes of the United States) making it obligatory upon the carrier to unload, rest, feed and water live-stock not less than once in every twenty-eight hour period during the transportation; that the horses in question were thus necessarily but involuntarily unloaded, and while so in the stock-pens for rest, food and water, were destroyed by fire, which was one of the dangers not assumed by defendant as a common carrier of live stock or imposed upon it by law. Plaintiffs' demurrer to the paragraph of defendant's answer pleading such defense was improperly sustained by the trial court. The animals were destroyed something less than three hours after they were unloaded at the stock-pens. Defendant contends that during that time, and when the damage was done, it had custody of the horses as warehouse-man only, and not as common carrier, and that inasmuch as the fire was of accidental and not of negligent origin defendant is not liable for the loss thus occasioned. Hutchinson on Carriers, 3rd Ed. Sec. 685; Southern Ry. Co. v. Heymann, 45 S. E. 491; Constitution of the United States, sub-section 3, section 8, Art. 1; section 3, Art. 6; I. C. R. Co. v. Curry, 32 R. on p. 516.

3.   The trial court committed error substantially prejudicial to defendant's rights in the admission of incompetent testimony offered by plaintiffs.

4.   The court erred in instructing the jury peremptorily to find for plaintiffs, regardless of the Act of Congress and grounds stated in point 2, supra; in not telling the jury they must take into account the condition the horses would have been in at New Haven, Ky., if they had reached there, in assessing their value; and in not instructing the jury as to what the legal rate of interest is.

JOHN A. FULTON for appellees.

### QUESTION OF LAW DISCUSSED.

The liability of a common carrier can not be converted into that of a warehouseman, while the goods are in itinere. Hutchinson on Carriers, 3rd Ed. Vol. 1, Sec. 141.

### AUTHORITIES CITED.

A. & E. En'cy., 2nd Ed., 5th Vol., page 436; Hutchinson on Carriers, 3d Ed., Vol. 2, Sec. 634; Hutchinson on Carriers, 3rd Ed., Vol. 1, Sec. 105; Hutchinson on Carriers, 3d Ed., Vol. 1, Sec. 141; Elliott on Railroads, 2nd. Ed., Vol. 4, Sec. 1553; Moore on Carriers, page 504, and Idem 516; 110 S. W. 820.

OPINION OF THE COURT BY JUDGE BARKER.—Affirming.

This is the second appeal of this case. The opinion on the first is to be found in 110 S. W. 820. The first appeal was taken by the plaintiffs to review the judgment of the trial court in sustaining a general demurrer to their petition and dismissing it upon their declining to amend. In the opinion on that appeal we held that a common carrier was liable for the safety of live stock committed to its care for transportation, unless lost or destroyed by the act of God or the public enemy, or where the loss or destruction was the result of the inherent propensity or vice of the animals. Upon the return of the case for further procedure in conformity to the opinion, the defendant (appellant) answered, denying the value of the horses destroyed by fire as alleged in the petition, and pleading affirmatively that the horses destroyed were being transported by it as interstate commerce from East St. Louis, Ill., to New Haven, Ky.; that, when the animals arrived at Louisville, Ky., under the provisions of the federal statute, requiring animals shipped by common carriers to be unloaded, fed, and watered at stated intervals, the horses were unloaded and placed in the Bourbon stockyards, to be fed, watered, and rested, and while in the stockyards they were burned by a conflagration which totally destroyed the stockyards; that this conflagration was without any negligence on the part of the carrier; and that, therefore, it was not liable for the loss occurring in the manner stated. A general demurrer to the second paragraph of the answer was sustained, and a trial upon the issue raised by the first paragraph, which is merely a denial of the value of the animals destroyed, resulted in a verdict in favor of the plaintiffs (appellees) for the sum of $2,180. From the judgment based upon this verdict the carrier prosecutes this appeal.

The first question which we propose to discuss is the merit of the second paragraph of the answer of appellant. It is conceded that the horses in question had been shipped by the appellees from Mountain Home, in Idaho, to New Haven, Ky., and that the appellant received them at East St. Louis, Ill., and was transporting them to their place of consignment, New Haven, Ky., when they were destroyed by fire in the Bourbon stockyards. It is not denied that the carrier had unloaded the stock at Louisville and placed them in the stockyards for the purpose of feeding, watering and resting them in pursuance of the requirements of the federal statute regulating the shipment of live stock as interstate commerce. Nor is it denied that the animals were destroyed while in the Bourbon stockyards by a general conflagration which was in no wise caused by the negligence of the carrier, or, so far as this record shows, by the negligence of any one. The question, then, arises: Did the unloading of the animals and the placing of them in the stockyards in pursuance of the statute relieve the carrier from its common law liability settled definitely as to it by the opinion rendered on the first appeal of this case? We think this question must be answered in the negative. Certainly there is nothing in the statute which indicates an intention on the part of Congress to change the rule as to the liability of carriers of live stock. The statute is a wise and humane enactment for the benefit of live stock being shipped as interstate commerce. It in no wise changes the common law duty of the carrier with reference to live stock except to make definite and certain how and when such stock shall be fed, watered and rested. Undoubtedly at common law it was the duty of car-

riers of live stock for long distances to feed, water and rest as a reasonable necessity required. Practically the statute only makes certain when and where the common law duty of the carrier for the preservation and comfort of the stock should be exercised. The mere fact that the stock is unloaded and placed in pens for the purpose of being rested, watered and fed does not change the liability of the carrier. The stock was still en route. It had not yet reached its destination. The care and responsibility of the carrier does not end until the stock reaches its destination and notice of its arrival is given to the consignee. This is not pretended in the case at bar. Here the stock was in the pen of the carrier. After it had been fed, watered and rested, as required by the statute, it was to be again loaded upon the cars and carried forward to its destination. It was still freight being transported.

On the subject of the common law duty of the carrier of live stock, it is said in 5 Am. & Eng. Encyc. of Law (2d Ed.) p. 436: "In the absence of special provisions in the contract of shipment, the carrier is bound to feed and water live stock being transported by it at proper intervals along the route, and it will be liable for a loss or injury occurring to the stock on account of its failure to do so. If it is necessary to unload them in order to feed and water them, the carrier must do so, and must have suitable and safe facilities therefor." To the same effect is 2 Hutchinson on Carriers (3d Ed.) Sec. 634; 4 Elliott on Railroads (2d Ed.) Sec. 1553; Moore on Carriers, p. 504. The rule is that when live stock is delivered to a railroad corporation for transportation, its liability commences when the stock is delivered to it at its stock

pens or warehouses for shipment, and continues until
the journey is ended, the consignee notified, and a rea-
sonable time given him to receive it. After that time,
if the consignee fails to receive and care for the stock,
then the carrier may place it in pens or warehouses
and the complexion of its liability is changed from
that of carrier to that of warehouseman; its liability
for loss as warehouseman depending upon its due care
or negligence. On this subject, 1 Hutchinson on Car-
riers (3d Ed.) Sec. 141, says: "At each successive
point of transfer from one carrier to another they
are liable to be placed in warehouses, there perhaps
to be delayed by the accumulation of freight or other
causes and exposed to loss by fire or theft without
fault on the part of the carrier or his agent. Super-
added to these risks are the dangers of loss by collu-
sion, quite as imminent while the goods are thus stored
at some point unknown to the owner as while they are
in actual transit. As a general rule, the storing of the
goods under such circumstances should be held to be
a mere accessory to the transportation, and they
should be under the protection of the rule which makes
the carrier liable as an insurer from the time the
owner transfers their possession to the first carrier
until they are delivered to him at the end of the route.
But when they have reached their destination, noth-
ing more generally remains to be done by the carrier
after storing them and giving notice of their arrival
to the consignee, and after allowing a reasonable
time for their removal he becomes a mere warehouse-
man; and, if, after that they are destroyed without
his carelessness, the loss must be borne, as in equity
it should be, by the owner." We have been cited to
no authority by appellant in support of its position

that the temporary unloading and placing of the stock in a warehouse or stock pen for the purpose of resting, feeding and watering it will have the effect to change the liability of a carrier from that of insurer to that of warehouseman; and we feel con- strained, in the absence of such authority, to hold that such unloading is a mere accessory to the trans- portation, and while thus temporarily unloaded the stock should be under the protection of the rule which makes the carrier liable as an insurer from the time the owner transfers his possession to the carrier until the stock is delivered to him at the end of the route.

The appellant as another ground for reversal in- sists that the court erred in admitting testimony as to the cost of the horses in Idaho and the expense of the plaintiffs in purchasing them. We would be in- clined to agree with appellant that this evidence was not only incompetent, but prejudicial to its interest; but, unfortunately for its position, the greater part of the evidence it complains of as incompetent was brought out on the redirect examination of the plain tiffs in response to, or to make plainer the evidence that had been developed on the cross-examination by counsel for appellant. The plaintiffs were asked on cross-examination what they paid for the horses in Idaho, and what their expenses amounted to, what they paid at hotels, their buggy hire, etc., and we think, therefore, that appellant has no right to com- plain that on the redirect examination plaintiffs' counsel made more specific the testimony which was really commenced in the cross-examination. Perhaps there were one or two questions and answers that, strictly speaking, might not come under this rule;

but we do not think, taking these alone, that the interests of the defendant were prejudiced, especially in view of the fact that the court practically eliminated it all by the instructions given to the jury limiting the damages sustained by the plaintiffs to the reasonable value of the horses which were burned at the place of consignment, New Haven, Ky.

Upon the whole case, we are of opinion that the appellant received a fair trial at the hands of the court, and that there were no errors committed adversely to its interests, or of which it has a right to complain.

Judgment affirmed.