## THOMAS v. FROST

No. 4777. Decided December 4, 1933. (27 P. [2d] 459.)

*Le Roy B. Young,* of Ogden, and *B. C. Call,* of Brigham, for appellant.

*R. L. Hedrick* and *E. M. Dunn,* both of Salt Lake City, for respondent.

FOLLAND, J.

Plaintiff, in his complaint, alleged that defendant maliciously and without probable cause charged him with having committed perjury during the trial of an action in the district court of Box Elder county, Utah, whereupon a warrant was issued for his arrest, and he was arrested, kept in custody for one day, and obliged to give bail in the sum of $1,000; that on the preliminary examination before the committing magistrate he was "fully acquitted" and discharged, and prayed for damages in the sum of $50,852.

Defendant, in his answer, admitted that he charged the plaintiff with perjury as alleged, but denied that he did so with malice or without probable cause; admitted that a preliminary examination was held as alleged, and in effect that plaintiff was discharged by the committing magistrate.

The case was tried to a jury in the district court. A verdict was rendered against defendant for $700 and judgment was entered for that sum and for costs. Motion for new trial was denied, and defendant appealed. After judgment plaintiff duly served and filed a memorandum of costs and disbursements. The defendant moved to have the costs taxed by the court. The court, on the hearing of the motion to retax costs, struck from plaintiff's cost bill the sum of $100, representing witness fees for certain witnesses. From this order plaintiff cross-appealed.

In order to understand the matter before the court, the following facts, shown by the record, must be kept in mind:

In October, 1924, there was being tried in the district court of the First judicial district of Utah, at Brigham City, a certain cause wherein the present plaintiff and others were plaintiffs and Edward D. Frost, Sr., the defendant herein, was defendant. That action involved Frost's right to the use of winter waters of Grouse creek in Box Elder county. *East Grouse Creek Water Co.* v. *Frost*, 66 Utah 587, 245 P. 338.

During the course of that trial it became material and important to know whether Thomas Thomas had signed and acknowledged before Phillip Paskett, a notary public, a certain affidavit protesting the application of one C. C. Toyne to appropriate waters from Grouse creek, which affidavit had been filed with the state engineer, and during the course of the proceedings before the state engineer an affidavit protesting the application had been filed; said affidavit having been signed by Edward S. Frost, Sr., the defendant herein, and by others, and also purporting to have been signed by Thomas Thomas, the plaintiff herein. If it were true that Thomas had actually signed that affidavit before Phillip Paskett, the notary public, then it became highly important to Frost to prove that fact, because in the affidavit the signers stated that "all of said waters (referring to Grouse creek) for many years, to wit, more than 20, has been appropriated and used by David P. Thomas and E. S. Frost from the first day of October to the first day of June of each and every year the said water being used in irrigating meadows and lucern lands during said time."

As the right of Frost to use the winter waters was then being questioned by Thomas and others in said action, it was proper and material for Frost to show that Thomas had theretofore stated under oath that Frost and another had prior to 1910 appropriated and used the water. Thomas was called as a witness in that trial, and on cross-examination was asked if he had signed such an affidavit. He denied having signed it. The state engineer brought into

court the original affidavit. Being confronted with the original affidavit and being asked if he had signed it, Thomas again, under oath, denied having signed it.

Thereupon the appellant herein went to the county attorney of Box Elder county and suggested to him that Thomas had committed perjury in so denying the signing of said affidavit. Mr. Frost stated to the county attorney that he knew Thomas had signed the affidavit because he had seen him sign it. The county attorney told him that perjury "was rather a complicated crime" and he wanted to go into the matter thoroughly, particularly with reference to the question of the materiality of the questions asked, because, as he stated, "perjury must have been false swearing of facts, which were known to be false and which were material to the issue." He told Mr. Frost that he would investigate the matter. He discussed the question of materiality with Mr. Call, Frost's attorney, and then went to Salt Lake City to examine the original affidavit, taking with him genuine signatures of Mr. Thomas. He went to the office of the state engineer, accompanied by a person expert in handwriting, and together they inspected the affidavit on file and compared the purported signature with the undoubted signatures of Thomas. He became satisfied from such examination and comparison that Thomas had signed the affidavit. Having reached the conclusion that the testimony was material and that it was false, the county attorney issued a complaint, and Mr. Frost signed it. It was filed in the city court of Brigham City, and the judge thereof issued a warrant for the arrest of Mr. Thomas. By virtue of this warrant he was arrested.

The county attorney, in preparing for the preliminary examination, caused Phillip Paskett to be subpoenaed as a witness for the state, and talked to him prior to the hearing. He told him he wanted to know the facts, that he did want to tell him what he was to testify to, but wanted to know what he would testify to so that he could intelligently examine him. Paskett persisted in saying, however, that

he had some "reasons" for not telling him, which he did not like to discuss with the attorney, and that he would tell his story when he got on the witness stand, and asked that the county attorney refrain from questioning him until on the witness stand. The county attorney was obliged to wait until Paskett testified before he knew what his testimony would disclose.

It appears that during the course of the water trial in the district court, after Thomas had denied that he had signed the affidavit, Paskett was called as a witness for Frost and was asked if the signature at the bottom of the affidavit was his, and if he had placed his notarial seal thereon, to which questions he answered in the affirmative. Apparently the attorney did not deem it necessary to ask Paskett the simple question as to whether Thomas had actually appeared before him and signed the affidavit. When Paskett was placed on the stand as a witness for the state in the preliminary examination, he stated under oath that Mr. Thomas did not sign the affidavit, but that he. (Paskett) had signed the name of Thomas Thomas at the request of Mr. Frost, who, he said, brought the affidavit to him and stated that Mr. Thomas had seen and read the affidavit and had requested him to present it to Paskett and have Paskett sign his (Thomas') name thereto; and that a son of Frost had produced a piece of paper containing what purported to be a genuine signature of Thomas and that Frost asked him to copy it on the affidavit, and that thereupon he "traced" Thomas' name on the affidavit. Frost, of course, denied this testimony and testified that Thomas had signed the affidavit before the notary public in his presence and in the presence of others. Paskett and Frost each testified to substantiate the same facts in the instant case as they had testified before in the preliminary examination with respect to the circumstances attending the signing of the name of Thomas Thomas to the affidavit. The state, at the preliminary examination, produced two handwriting experts who testified that the signature on the affidavit was the genuine

signature of Thomas. The city court, at the conclusion of the preliminary examination, discharged the defendant. Thereupon Thomas commenced this action to recover from Frost damages for the malicious prosecution of the perjury charge.

The appellant has assigned thirty errors. Some of them are not argued at all in the brief, and hence are deemed waived; others are argued so inadequately that rule 10 of this court is violated, and so they will not be considered. We will state, however, that notwithstanding we do not incumber this opinion with a consideration of some of the assigned errors, we have given them careful attention, and think there is no merit in them.

More than one-half of appellant's brief is devoted to a discussion of the question as to whether the evidence shows there was probable cause for appellant to charge respondent with perjury, and as to whether the evidence shows that appellant was actuated by malice in so doing; the contention being that in order to warrant the plaintiff to recover damages he must show affirmatively that there was malice as well as want of probable cause. Counsel is right in this contention, the law being too well settled to permit any doubt on that question.

The important question the court and jury had to consider was whether or not the defendant, in causing a complaint to be issued charging plaintiff with perjury, acted maliciously and without probable cause. Both must concur in order that the defendant be held liable. *Kennedy* v. *Burbidge,* 54 Utah 497, 183 P. 325, 5 A. L. R. 1682; *Singh* v. *MacDonald,* 55 Utah 541, 188 P. 631.

It is the further contention of counsel that the appellant made a full and complete statement of the facts to the county attorney, and that thereupon the county attorney made an independent investigation and as a result of such investigation reached the conclusion that the respondent had committed perjury, and that this, under the law, absolves the appellant from any liability to respondent, even though it appears that the committing magistrate

found there was no probable cause for the institution of the proceeding. But the weakness of these contentions, as applied to this case, is in ignoring the fact that the principal issue at the trial was whether appellant made a full and truthful disclosure to the county attorney of all the facts known to him. There was competent testimony offered by the respondent which, if believed by the jury, conclusively proved that the appellant did not make a truthful statement of the facts to the county attorney, but, on the contrary, misled the county attorney. We refer to the testimony of the witness Paskett, who testified that Thomas did not sign the affidavit, but that Frost had brought the affidavit to him and asked him to sign Thomas' name to it. The jury had a right to believe the testimony of Paskett and the verdict shows it believed him. The testimony of Paskett was sharply contradicted by the appellant and his son, and there was opinion evidence given by handwriting experts that the hand that signed Thomas' name to the affidavit was Thomas' own, and other evidence which would have justified the jury in entirely ignoring the testimony of Paskett. Where the truth lay was a question the jury was obliged to decide, and it found that the truth was with Paskett and not with the appellant.

Appellant complains that the court erred in refusing to give a proposed instruction as follows:

"A portion of the proceedings in the case of the *State of Utah* v. *Thomas Thomas* heretofore heard in the City Court of Brigham City, has been introduced as evidence in this case for the sole purpose of proving that said action terminated in favor of plaintiff in this action and it must be considered by you for this purpose and no other. You are not to consider this as any evidence whatsoever tending to either prove or disprove the existence or lack of probable cause or malice in the prosecution of said criminal action."

The first sentence of this proposed instruction is not an accurate statement of fact. The record of the city court in disposing of the perjury case and discharging the defendant therein was offered in evidence for all purposes, and was

admitted by the court without limitation as to its purpose. The last sentence is erroneous in view of what has been held by this court in *Smith* v. *Clark,* 37 Utah 116, 106 P. 653, 26 L. R. A. (N. S.) 953, Ann. Cas. 1912B, 1366, and in *McKenzie* v. *Canning,* 42 Utah 529, 131 P. 1172. In the latter case the law on that subject was announced in a few words:

"The burden, of course, was on the plaintiff to show want of probable cause. He, in that respect, made out a prima facie case by showing his discharge in the criminal prosecution upon a hearing and an investigation of the charge before the magistrate."

The discharge of respondent in the criminal prosecution was after a hearing and investigation of the perjury charge by a magistrate. No issue was made by pleading or otherwise that such discharge was procured by fraud, perjury, or other undue or unfair means so as to render its effect worthless as evidence of want of probable cause. Under these circumstances, the evidence of such discharge should not be restricted as proof only that the action terminated in favor of the accused.

The trial judge gave this proposed instruction, but on exception being taken by plaintiff's counsel after the jury had retired he decided to withdraw it. The court announced: "I will withdraw number thirteen from the jury. We will go down to the jury room, and have the reporter come along and take what is said before the jury and you can have your exception if you care to." Whereupon counsel said: "Yes, give us an exception to the refusal of the court to give our number three or thirteen here." The judge in the jury room said to the jury: "Gentlemen, we have decided to save a little time and energy by coming down here to your room instead of having you come up to the court room. Instruction No. 13, which reads as follows (here the court read that instruction). That instruction is withdrawn from your consideration, and is not given to the jury, and you are not to consider it."

Counsel now vigorously assail as error the act of the court in going to the jury room, instead of having the jury return to the courtroom. No exception was taken to the court's action in so doing and no assignment of error was made. The only exception taken was to the refusal to give the proposed instruction. Had the attorney for defendant made any suggestion to the trial judge that he deemed it improper for the judge to go to the jury room, we have no doubt the judge would have had the jury brought to the courtroom for additional instruction. As stated above, the instruction was erroneous, and the court was justified in withdrawing it from the jury on his attention being called to the error.

Appellant complains that the court erred in refusing to give his proposed instructions Nos. 4, 5, and 6. Proposed instruction No. 4 is as follows:

"If you find that the defendant laid all the facts before the county attorney of Box Elder County, and the county attorney thereupon drew up the complaint and prepared the warrant and defendant had no knowledge of the law, but relied upon the county attorney to prepare said charge, and the defendant did not cause the charge to be made, then plaintiff cannot recover in this action."

No assignment of error is made with respect to the refusal of the court to give appellant's proposed instructions Nos. 5 and 6. His proposed instruction No. 5 was given by the court, some necessary verbal changes being made, and as thus corrected sufficiently covered the subject-matter of the three proposed instructions. The instruction as given by the trial court is as follows:

"You are instructed if you believe from the evidene in. this case that defendant before signing said complaint, or before taking any criminal action against the plaintiff consulted in good faith the county attorney of Box Elder County and communicated to such attorney in good faith all the facts to the best of his knowledge, or which he might have learned by reasonable diligence bearing upon said proposed prosecution, that said consultation and communication was had and made in good faith and that said county attorney upon such admission (submission) of facts advised defendant that there

was probable cause to believe the plaintiff guilty and advised defendant to sign a criminal complaint charging the plaintiff with perjury, and if you further find that the defendant signed said complaint in good faith in consequence of such advice and not in pursuance of a previous fixed determination to do so, then your verdict must be for the defendant."

Appellant complains that the court erred in refusing to give his proposed instructions No. 7 and 8. Again appellant is in conflict with the doctrine announced in *McKenzie* v. *Canning*, supra. In request No. 7 the court was asked to say to the jury, "nor can want of probable cause be inferred from the discharge of plaintiff on the charge of perjury," and in No. 8, "neither proof of malice on the part of defendant or determination of the prosecution in favor of plaintiff is sufficient evidence of the want of probable cause."

Appellant complains of the giving of the following instruction:

"You are instructed that the commencement of a criminal prosecution by a defendant *simply for the purpose of defeating the claims of a plaintiff in a civil action then pending* and without probable cause with any other motive than to bring the guilty party to justice would be sufficient evidence of malice on the part of the person commencing the proceedings." (Italics supplied.)

We think the instruction erroneous. There is not anything in the pleadings or in the evidence on which to base an instruction which implies that the motive or purpose of defendant might have been "simply for the purpose of defeating the claims of a plaintiff in a civil action then pending." So far as the record discloses, this idea was suggested for the first time by the instruction of the court. The fact of the existence of the perjury charge was not used, or attempted to be used or referred to, by defendant or any one else in the water suit, which was the only case then pending between Thomas and Frost, for the purpose of defeating the claims of plaintiff or to discredit him as a witness or

at all. It is quite true that the water case was, strictly speaking, *pending* until it was finally disposed of on appeal. It was not until after respondent had given his testimony in the water case that appellant spoke to the county attorney about instituting perjury action. The county attorney held the matter under advisement from October until the February following. Appellant signed the perjury complaint February 2, 1925, after the decision of the district court in the pending water litigation was announced but before the decree was entered. There is not a suggestion in the record that the fact of the perjury charge was called to the attention of the trial judge on motion for a new trial or at any other time, or used in the Supreme Court on the appeal. Nor are there any facts in the record from which an inference is justified that it was the intention of appellant in instituting the perjury action to defeat the claims of respondent in the water litigation then pending. A suggestion of this nature made to the jury by instruction of the court, without any facts on which it might rest, was prejudicial to the rights of this appellant.

It is true that an instruction similar to this one was approved in *Indianapolis Traction & Terminal Co.* v. *Henby,* 178 Ind. 239, 97 N. E. 313, a case relied on by respondent and from which he copies the request for instruction which the court gave; but the pleadings and facts in that case fully justified such an instruction. There the plaintiff Henby had sued the defendant corporation for damages for injuries suffered through its negligence. A trial was had wherein plaintiff testified for herself. The trial resulted in a disagreement of the jury, and a second trial followed. Before the second trial was had the defendant caused a news agent, who had no personal knowledge of the facts, to charge the plaintiff with perjury committed while giving her testimony. During the course of the second trial of the damage suit, and before the perjury case was disposed of, the plaintiff was obliged to answer whether or not she had not been arrested on a charge of perjury, still pending,

based on her testimony given at the first trial of her case. In the argument of the cause to the jury, defendant's counsel asserted that plaintiff had been arrested for perjury committed on the first trial of the case, and was unworthy of belief, and ought to be in the penitentiary. The jury, on the second trial of her damage action, found for the defendant. She was then tried on the perjury action and discharged. She sued the defendant for malicious prosecution in causing the perjury action to be instituted alleging in her complaint that the defendant had maliciously instituted the criminal action for the sole purpose of defeating her civil action on the second trial thereof. Thus a direct issue was made on that question. Here, however, aside from the fact that there was no direct issue made on this question, on the record the jury would not be justified in finding as a fact, that appellant, in causing the perjury action to be instituted, was impelled to do so because he hoped that his action might, in some degree, aid him in winning the water case. Such an aspect of the case ought therefore not have been submitted to the jury.

The appellant complains of the giving of an instruction, No. 11, wherein the jury was instructed in substance, among other things, that it was the duty of Frost in talking to the county attorney to state all the facts within his knowledge, and such facts that he could have learned by a fair and reasonable inquiry tending to show the innocence of Thomas. The instruction is attacked upon the ground that it requires the complainant "to ascertain and discover any real or fancied defense that may exist." There is no merit in this. The rule is well established that it is the duty of the complainant to make a full, fair, and complete disclosure of the facts within his knowledge, and also all facts which he had reasonable ground to believe existed at the time of making the statement, or all facts which he could have ascertained by reasonable diligence. 38 C. J. 434.

Appellant cannot complain for the further reason that in his requested instruction No. 5, which was given by the

court, he asked the court to charge that it was the duty of complainant to communicate to the county attorney in good faith "all the facts to the best of his knowledge, or which he might have learned by reasonable diligence bearing upon said proposed prosecution."

Complaint is made that the court erred in giving instruction No. 13, relating to expert witnesses. Counsel obviously refer to instruction No. 14, for No. 13 is the instruction withdrawn from the jury. All that is said in appellant's brief with respect to this is:

"Instruction No. 13 is not a full, fair and complete statement of the law relative to the weight of evidence to be given by experts, especially in a case like the one under consideration."

While the instruction given is not to be taken as a model of clarity, yet it is correct as far as it goes. It does not state all the law pertaining to the opinion evidence of handwriting experts. Before appellant can take advantage of an objection that more or other instruction should have been given on the subject, he should have made request of the court to further instruct. This he did not do. There is no merit in this assignment.

By assignments of error Nos. 12, 13, and 14, appellant complains of the action of the court in permitting counsel for respondent to ask and have answered certain questions involving the claims of Frost and D. P. Thomas to the winter waters of the right hand fork of Grouse creek. In the water suit, referred to above, Thomas Thomas and others sought to prevent Frost from using such waters. The district court, in the water suit, made findings and rendered a decree partly in favor of Frost and partly in favor of the plaintiffs in that suit. On appeal by Frost this court reversed the case and held Frost was entitled to use the winter waters of the right-hand fork on about sixty-six acres of land. *East Grouse Creek Water Co.* v. *Frost,* supra. It was Thomas' testimony in that suit which formed the basis of the perjury charge.

In the course of respondent's direct examination his counsel asked him the question: "Do you know whether D. P. Thomas claimed all the winter waters for the original Thomas Meadow, from Oct. 1st to June 1st of the right hand fork from 1876 to 1905?" After objection the court said. "I will permit him to testify that he had knowledge of that subject." The only answer permissible under this ruling would be either yes or no, but the witness went farther and answered, "He used it, yes sir, he claimed it all." No motion was made to strike the answer and it remained in the record. Counsel for appellant made no effort to hold the witness to an answer permitted by the court's ruling, and it is too late now to assign error because more was answered than the ruling authorized.

The next question, answered over objection was: "Do you know whether Edward Frost claimed any right to the winter water of the right hand fork between the time he settled on the ranch and 1905?" The answer was, "No sir." Except for the next question and answer, the meaning of this answer would be that the witness did not know. The next question was: "When is the first time that you ever knew that Mr. Frost claimed the right to use the winter water on the right hand fork?" Without objection the witness answered, "1919," and was then asked: "Where and when did you first hear of that claim?" Over objection he gave a long answer detailing circumstances and conversations had in the presence of several persons, wherein Frost was alleged to have said that he had a right to the water because he bought it from David Thomas. On motion to strike the court ruled that "the conversation should be stricken out. That he remembered it at the time, I will permit that to stay in." Counsel for respondent then said. "The answer that he learned it in 1919 may stay in," to which the court replied: "That may remain, but this conversation that was down there, I think that should go out. It is too remote." No exception to this ruling was taken by appellant. A reading of the transcript discloses rather clearly that

while respondent's counsel was endeavoring by his questions to review the entire dispute between Frost and Thomas with respect to their water rights, all of which had been litigated and disposed of in the East Grouse Creek Co. v. Frost case, the court sustained objections to most of these questions, reminding counsel more than once "this is a malicious prosecution case, and not a water case, and we are not going into all the details of the water case." The court attempted to limit the testimony to answers tending to show whether or not the witness (respondent) "had knowledge of the subject."

About the only answer which appellant might be justified in claiming as prejudicial on these assignments is the one that Thomas first learned that Frost claimed waters from the right-hand fork in 1919; but he made no objection to the question when asked, and took no exception to the ruling of the court permitting it to stand after striking out the rest of the answer. Assignments 12, 13, and 14 are without merit.

Error is assigned to the trial court permitting respondent to answer questions relating to the conduct of his children, two boys of tender age, on account of his arrest. He was permitted to say that they cried before going to sleep of nights, and worried about whether he would be put in the penitentiary. The testimony was followed by the direct question, "Did the attitude of the children have any effect upon you?" to which he answered, "It caused me to worry a great deal more than if I had not had these children." It is urged by appellant that "there was no issue in the complaint asking for damage for injury suffered by either of these two children." Of course, the respondent's recovery must be limited to injuries suffered by himself, and such evidence of the effect of his arrest on members of his immediate family is permissible only as bearing on the suffering which he has been made to undergo on account of the alleged wrongful prosecution. *Flam* v. *Lee,* 116 Iowa 289, 90 N. W. 70, 93 Am. St. Rep. 242.

During the course of the cross-examination of respondent, he was asked if his brother, when he had sold him the ranch, had not told him about the controversy which he and other residents of Grouse creek had had with Mr. Toyne. Instead of answering directly, he narrated a conversation he had with his brother after he was arrested, in which the brother had said: "I never filed no protest against C. C. Toyne nor I never wrote a letter to the state engineer's office. I defy any man to say I ever did." No motion was made to strike the answer. On re-direct examination plaintiff's counsel asked him: "Now counsel on cross examination ask you whether or not in 1919 Mr. D. P. Thomas hadn't called your attention to a letter that he had filed with the State Engineer's office; did you have any conversation with Mr. D. P. Thomas about that letter?" He answered in the affirmative, and then was asked what that conversation was. Defendant's counsel was taking notes at the time and did not object. The answer was "I told him about these letters and affidavits and protest that had been put into the State Engineer's office, and he said that he had never signed any protest, nor filed any affidavit nor even written any letter to the State Engineer's office, he says, 'I don't know about it, I don't know about it. I don't know anything about it, absolutely nothing.'" Counsel then moved to strike the answer, and the motion was denied. To this ruling error is assigned.

It is to be observed that the original question asked plaintiff related to whether or not plaintiff's brother had told him in 1919, when he sold him the ranch, about the controversy with Toyne. Instead of directly answering this, he, without objection, related a conversation he had with his brother in 1925, after his arrest. On redirect examination he repeated this conversation with some additions which added nothing to the effect of the conversation. Both answers violate the hearsay rule, but appellant having first developed the subject-matter on cross-examination is

in no position to now complain. 28 R. C. L. 597; *Louisville & Nashville R. Co. v. Stiles, Gaddie & Stiles,* 133 Ky. 786, 119 S. W. 786, 134 Am. St. Rep. 491; *Apple v. Board of Commissioners,* 127 Ind. 553, 27 N. E. 166. Moreover, there could be no prejudice because the conversation elicited by appellant on cross-examination remained in the record.

The witness Hadfield, a deputy sheriff, was asked, on his direct examination, the question, "I ask you whether or not you observed that this charge of perjury had any effect on the plaintiff with respect to his physical or mental condition," and was permitted to answer, "Why I just actually saw him weakening, you might say just fading away." Objection was made to the question, and a motion to strike the answer was interposed; but the court permitted the testimony to stand. In this the trial court committed error. The question called for the conclusion of the witness. By it he was called upon to say what effect the filing of the perjury complaint had upon the mental and physical condition of the plaintiff, and his conclusion was that because of the charge the plaintiff just "faded away."

There was evidence that plaintiff's wife had deserted him, that he had lost his farm through foreclosure proceedings, that he had, some years before, been struck by lightning, and that he had suffered from blood poisoning in May following his arrest. Perhaps some of these misfortunes would have something to do with his "fading away." It was competent for the witness to describe the condition of respondent, but it was for the jury to decide from all the facts and circumstances in evidence whether that condition was caused or contributed to by the filing of the perjury charge. It is manifest that the witness should not have been permitted to give his opinion as to the cause of respondent's physical condition. *Saunders v. So. Pac. Co.,* 15 Utah 334, 49 P. 646; *Johnson v. Union P. Ry. Co.,* 35 Utah 285, 100 P. 390; *Union Cemetery Co. v. Harrison,* 20 Ala. App. 291, 101 So. 517; *Sarco Co. of N. J. v. Gulliver,*

129 A. 399, 3 N. J. Misc. 641; *Hunter* v. *Joplin & P. Ry. Co.,*
109 Kan. 169, 197 P. 1092. Whether the admission of this
testimony was prejudicial and would itself justify a reversal
of the judgment need not detain us, since for other reasons
a new trial must be directed.

When the witness Horsley, the county attorney who au-
thorized the perjury complaint, was on the stand, he was
asked by counsel for respondent on cross-examination this
question: "Now, Mr. Horsley, I will ask you if when Mr.
Frost talked to you shortly after the water suit, as
you have testified he did, if he didn't at that time say 
that he could produce four or five witnesses to prove
that Thomas Thomas signed those affidavits?" The wit-
ness answered by saying that whether Frost had told
him or that he had heard such statement since he could
not say. He was then asked if he had talked with Mr. Pas-
kett between the time Mr. Thomas was charged with per-
jury and the time of the trial, which he answered in the
affirmative. Thereupon, when Phillip Paskett was called
by plaintiff on rebuttal, he was asked to relate a conversa-
tion he had had with Mr. Horsley and was permitted, over
objection, to testify: "He (Horsley) came to me and he
said, 'Mr. Paskett,' he said 'what about this man Frost that
lives out there,' he says, 'I don't know much about him, he
wants to file a charge against Thomas Thomas for perjury.'
And I said 'why, on what foundation,' and he said 'for sign-
ing these affidavits.' He said 'Mr. Frost said that he could
produce five or six men that were willing to swear they saw
Thomas Thomas sign those affidavits,' that was before me,
and I said, 'he can't do it. I know Thomas didn't sign those
papers.'" A motion was made to strike this testimony, but
the court denied the motion. This ruling is assigned as error.

There is much confusion in the record and also in the
arguments in the briefs with respect to this assignment.
The question put to Paskett was intended as impeachment
of Horsley. Having failed to deny specifically that Frost
said to him he could produce four or five witnesses to prove

Thomas Thomas had signed the affidavits, Horsley was subject to impeachment with respect to that conversation. The impeaching question, however, related to something else. It referred to a conversation between Horsley and Paskett, not to one between Frost and Horsley. No foundation whatever was laid to permit respondent's counsel to ask Paskett for the conversation had between him and Horsley. It is elementary law that before former declarations or conversations can be used to impeach or contradict a witness, his attention must be called to what may be brought forward for that purpose, and this must be done with particularity as to time, place, and circumstances, and the substance of the declaration or conversation stated, so that the witness may deny it or make explanation. 6 Jones, Commentaries on Evidence (2d Ed.) 4736. Horsley's attention was not called to any statement claimed to have been made by him to Paskett, or conversation with him, in which anything was said with respect to what Frost had told Horsley. So, also, even had the foundation for the question been laid, the question was not in proper form because it called for the conversation generally and was not limited to any particular statement or conversation set forth in the foundation question which it purported to meet. The testimony of Paskett was clearly hearsay, was not within the rule as to impeachment, and should have been stricken. For this, and the other errors heretofore referred to, the judgment must be reversed and a new trial granted.

After judgment had been entered the attorney for respondent filed a memorandum of costs and disbursements, which was duly verified. In this there was a claim for witness fees for three witnesses, Elmer Kimber, Wm. P. Paskett, and Albert F. Richins, who had been subpoenaed, but who had not testified at the trial. They had traveled 160 miles in obedience to a subpoena and had attended the court for four days; but the counsel for plaintiff had not caused them to be sworn. The mileage and four days' attendance fees for Paskett and Richins amounted to $88.

Three other persons who had been subpoenaed to attend and had testified on the second day of the trial were Sidney Paskett, Allen N. Tanner, and James Douglas. The defendant objected to certain items in the cost bill and asked the court to retax costs. The items objected to were $9.60 for telephone service and fees for subpoenaing witnesses; witness fees for Albert F. Richins and Wm. P. Paskett, and all other persons who did not testify, and to two days' witness fees instead of four days' witness fees for those who did testify, it being alleged that at the end of the second day of the trial all witnesses for plaintiff were excused. The motion with respect to the item of $9.60 for telephone service and for serving supoenas was denied, the court adding:

"I will say to you, though, gentlemen, with regard to the motion to cut down the witness fees of these several witnesses, I am disposed to grant it."

Thereupon counsel for respondent was sworn and testified to the effect that he had caused the witnesses to be subpoenaed; that Richins and Paskett were in attendance for four days; that they were subpoenaed in good faith and for the purpose of using them in rebuttal of the testimony of witnesses for defendant, namely, J. B. Lee, Leonard Lee, and Mr. Wycoff, who were present in court during the trial. They, however, were not put on the stand by the defendant. He testified that he had been informed that the Lees and Wycoff had been subpoenaed by and were going to testify for the defendant. The appellant offered no testimony. The court thereupon struck from the cost bill the items of witness fees and mileage for Wm. P. Paskett and Albert F. Richins, or $88, one day's attendance for four witnesses, or $12, thereby deducting from the cost bill as filed.

In this state the rule has been long established that fees for witnesses subpoenaed in good faith and attending, although not actually sworn, may be taxed, unless it is made to appear that an unnecessary number of witnesses were

brought into court for the purpose of unnecessarily increasing the cost as a punishment to the opposite party. *Cole* v. *Ducheneau,* 13 Utah 42, 44 P. 92. This is the rule supported by the great weight of authority. 15 C. J. 126.

The evidence is clear, and there is not anything to the contrary, that the witnesess Wm. P. Paskett and Albert F. Richins were subpoenaed in good faith by counsel for respondent, who believed it would be necessary to use them in rebuttal; he having been informed that J. B. Lee and others, who were not called to testify, would be called. It may be noted that J. B. Lee, Paskett, and Richins were persons whose names appeared on the questioned affidavits with that of Thomas Thomas. Neither of the parties saw fit to call any of these persons as witnesses. In view of the evidence adduced and in the absence of any showing that Paskett and Richins were not subpoenaed in good faith, but for purposes of oppression, it was error to refuse to allow mileage and witness fees for their attendance.

A great deal of discretion is vested in the trial court with respect to the number of witnesses and the number of days' attendance for which the prevailing party may tax costs. 15 C. J. 131-133. The record here shows that several of plaintiff's witnesses were excused from further attendance after the second day of the trial. It was within the discretion of the court to disallow witness fees for such witnesses after their discharge.

We have discussed the question of witness fees for the reason that on a second trial, if respondent should again prevail, the court may avoid the same error in passing on the question of costs incurred in the first trial.

The judgment of the court below is reversed, and the cause remanded to the district court of Box Elder county for a new trial. Costs on appeal to appellant.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.